Edward J. Greenfield, J.
This case raises the question of which State’s law applies in a multi-State transaction in which property is purchased subject to a security interest in one jurisdiction, repossessed and resold in another, and a deficiency judgment is sought in a third. New York appears to have no case squarely in point.
The defendant, an enlisted man in the United States Coast Guard, on September 8, 1959 purchased an automobile in Washington, D. C., on a conditional .sales contract. The automobile dealer assigned the contract to plaintiff, the Associates Discount Corporation, a finance company national in scope, and defendant was notified to make all installment payments directly to the plaintiff.
The contract was headed “District of Columbia Conditional Sales Contract”, and defendant, for his residence, gave an address in Washington, D. C. The contract provided that the purchaser was not to ‘ ‘ remove the motor vehicle from the filing district where he now resides * * * except upon the written consent of the owner hereof.” It was further agreed that the contract owner could repossess the automobile “ without notice or demand and with or without process of law regardless of whether the purchaser is in default hereunder or not.” If there had been a default, all sums paid under the contract would be forfeited, the car could be resold publicly or privately without notice and with no right of redemption, and the purchaser would remain liable for any deficiency.
Although defendant gave his address at the time of the sale as Washington, D. C., he was a sailor, and it is in the nature of things that just as cats are wont to roam, so sailors are not to be tied down to one port for long. Where volition does not carry them, official orders will. Thus, not long after the sale, defendant removed to East Boston, Massachusetts, bag, baggage, wife and car. He made several payments thereafter from East Boston to plaintiff’s Massachusetts office, and plaintiff dealt with him there without any protest as to his change of domicile.
Plaintiff knew exactly where the automobile was to be found, and on February 3, 1960, while defendant was at sea and not current in his payments, it repossessed the car, removed it from East Boston to Worcester, and without notice to the defendant, who at that time had returned from his voyage, resold it on March 18, 1960 at a private sale for less than half the price defendant had committed himself to pay just a few months before.
*371 At a later time, defendant’s peripatetic life brought him to New York, where he was personally served in this action by plaintiff to recover the deficiency still allegedly due under the contract. The original purchase price, including finance charges and insurance, was $2,452.40. Defendant had paid in towards that amount a total of $842.08 and was credited with the $975 realized on the resale, so that plaintiff claims a balance presently due of $635.32 plus attorneys’ fees and expenses, for a total of $747.86.
It is the well-established law of New York, the forum where the deficiency judgment is sought, that if the repossession and resale are not in compliance with the law, no suit for any claimed deficiency will lie. (Ryan v. General Motors Acceptance Corp., 248 App. Div. 668; Mott v. Moldenhauer, 261 App. Div. 724; Island Installment Corp. v. Panico, 37 Misc 2d 186.)
Clearly, however, New York’s statutes in effect at the time governing repossession and resale procedure in conditional sales (Personal Property Law, §§ 79, 80) can have no application to a District of Columbia contract which was sought to be enforced in Massachusetts, at a time when neither of the parties had any relation to New York. A New York court must then look to its own body of conflict-of-laws rules to determine which foreign law shall here be applied to each specific issue. (Babcock v. Jackson, 12 N Y 2d 473; Direction der Disconto-Gesellschaft v. United States Steel Corp., 300 F. 741.)
Plaintiff argues that there is no real problem — that the contract between the parties permitted repossession and resale without notice, and that this was perfectly permissible under the District of Columbia Code (§ 28-1409) where the contract was made.[1] Defendant points out however that Massachusetts, where the repossession and resale took place, prohibited resale without notice (Mass. Gen. Laws Ann., ch. 106 [Uniform Commercial Code], § 9-504, eff. Oct. 1,1958) and expressly provided that the notice requirement could not be waived or varied (id., § 9-501, subd. [3]).
In deciding whether or not to permit a suit for a deficiency, which presupposes a valid resale, which law is New York, as the forum, to apply? Plaintiff urges that the agreement between the parties must govern, and that as it was a valid contract in the District of Columbia, where made, it is valid everywhere. This is the tradition in the law of conflicts since Beale — that *372 the law of the place of contracting governs the validity and effect of a contract of conditional sale, and will be enforced pursuant to its terms by a sister State unless it offends the public policy or positive statute of the sister State. (78 C. J. S., Sales, § 568.) Even without express statutory command however, we have more and more been considering the law of that State with Avhich the contract has the most significant relationship, or grouping of contacts. (See Auten v. Auten, 308 N. Y. 155; Leflar, Conflict of Laws, 36 N. Y. U. L. Rev. 36, 53, citing Restatement, Conflict of Laws 2d, § 322 (1) [Tent. Draft No. 6, 1960]; Ehrenzweig, Conflicts- — -Performance of Contracts, 59 Col. L. Rev. 1171.)
The neat and simplistic solution — application of the lex loci contractus — fails to meet the problem head on. We are concerned here not with the validity of the contract, or interpretation of the contract, or ascertainment as to whether there has been a breach of the contract — all of which are undisputed — but with the rules governing the remedies for an admitted breach of an admittedly valid contract.
Pragmatic policy considerations would dictate that the local law of the jurisdiction where the remedies are sought to be invoked be accorded primacy. The self-help permitted in the area where the parties originally bargained may lead to a breach of the peace and worse in another place and another time. The “ law west of the Pecos ” has no place on the import lists of staid New England. “ Rules with respect to the repossession, removal and disposition of goods conditionally sold affect the orderly enjoyment and peaceful possession of property within the community. On occasion, failure to observe the local laws may lead to violence. The law of the situs at the time of repossession should clearly supply the rules governing the seller’s behavior in retaking the goods”. (Cavers, The Conditional Seller’s Remedies, 35 N. Y. U. L. Rev. 1126, 1141.)
Let us then look to the laws of Massachusetts to see whether it would have enforced the District of Columbia contract according to its terms, or would refuse enforcement as repugnant to its declared public policy. Undoubtedly it would have applied District of Columbia law in resolving questions of validity, interpretation, compliance or breach. Would it do so with respect to remedies?
The leading case of Shanahan v. Landers Constr. Co. (266 F. 2d 400 [C. A. 1st, 1959]) is cited by defendant as an indication it would not. The contract of sale there Avas executed in Massachusetts. The purchaser was a resident of New Hampshire who took the machine he bought first to Vermont and then to New *373 Hampshire. On default it Avas repossessed in Ngav Hampshire, moved to Massachusetts and resold there without notice. Massachusetts at that time did not require notice prior to resale; New Hampshire did. The court rejected the rule suggested by sections 272 and 281 of the Restatement of Conflict of Laws that the location of the chattel at the time of contract of sale, or the leso loci contractus should govern. It is not clear however that that case, in opting for the laAV of Nbav Hampshire, adopted the rule of applying the law of the situs of the chattel where repossessed, since the contract was finally signed in the latter State, the buyer resided there, and both parties contemplated from the outset the machine would be used there. None of those additional facts obtain here.
In seeking our answer, however, we need not rely solely on shifting principles of conflict of laws, or pursue the will-o’-the-wisp of public policy. The latter appears plain enough when the statute expressly forbids any waiver or variation of the notice requirements. But the Uniform Commercial Code, which is now the law in New York as well as in Massachusetts, has its own built-in conflict rules, explicitly dealing with transactions which, before they have run their course, spill over State lines.
Section 1-105 deals generally with all commercial transactions covered by the code, and permits the parties to agree as to the law which will govern, provided that State bears a reasonable relation to the transaction. Failing such agreement, the code would apply to all transactions bearing an “ appropriate relation ” to the State where it was in force. Express provision is made in subdivision (2) for the application of sections 9-102 and 9-103 on secured transactions, with any contrary agreement being effective only to the extent permitted by the law specified.
Section 9-102 makes it plain that the article on secured transactions (which includes a prohibition on waiving or varying the notice requirements) applies “ so far as concerns any personal property and fixtures within the jurisdiction of this State ’ ’ in which there is a security interest, including conditional sales. The Massachusetts Code Comment (Mass. Gen. Laws Ann., ch. 106, § 9-102) says of this section: “It applies to any security interest or collateral within the Commonwealth.” And Homer Kripke, in his commentary on the section, states: “In general this Article adopts the position, implicit in prior law, that the law of the state where the collateral is located should be the governing laAV, without regard to possible contacts in other jurisdictions.” (McKinney’s Cons. Laws of N. Y., Book 62½, Uniform Commercial Code, p. 326.)
*374 The only exception with which we need be concerned is in section 9-103, dealing with multiple State transactions, in which it is provided that when property already subject to a security interest is brought into a State, the validity of that interest is determined by the law of the jurisdiction where the security interest attached. This is in accord with the well-grooved traditions of lex loci contractus. (Swift & Co. v. Bankers Trust Co., 280 N. Y. 135.) It has always been recognized however that if, after a valid conditional sale, a chattel is taken into another State, new interests may arise in the second State if it has a law dealing with property within its territorial jurisdiction. (Restatement of Conflicts, § 276; 78 C. J. S., Sales, § 568; Cavers, op. cit., p. 1143.)
■ Thus, applying the statutory law to the facts in this case it is plain (a) that the parties did not expressly agree as to which law would govern; (b) the validity and interpretation of the conditional sales agreement under District of Columbia law is unchallenged; (c) whether the property subject to the agreement had been removed to Massachusetts — rightly or wrongly — is immaterial; (d) the parties dealt with the property and the obligations arising out of its sale in Massachusetts. Hence the provisions of the Uniform Commercial Code in effect where the property was located govern. No matter what the contract may say in obviating the requirement of notice prior to resale, notice was required in the State where the repossession took place. Notice never having been given, the resale was illegal in Massachusetts, and New York will not permit any recovery under those circumstances of any alleged deficiency.
Plaintiff’s complaint is dismissed. Judgment for the defendant.

. It is to be noted that since that time, the District of Columbia has shifted from a permissive to a protective jurisdiction, and like New York, has adopted the Uniform Commercial Code (District of Columbia Code, § 28:9-504), which was already on the books in Massachusetts.