629 P.2d 340

Patrick CHISCHILLY,
Plaintiff-Appellant,

v.

GENERAL MOTORS ACCEPTANCE CORPORATION, a Delaware Corporation, Defendant-Appellee.

No. 4163.

Court of Appeals of New Mexico.

July 10, 1980.

Joseph F. Gmuca, Crownpoint, Wayne H. Bladh, Window Rock, Ariz., for plaintiff-appellant.

Nicholas R. Pica, Campbell, Cherpelis & Pica, Albuquerque, for defendant-appellee.

## OPINION

LOPEZ, Judge.

Chischilly, a Navajo Indian, brought suit in District Court in Bernalillo County against General Motors Acceptance Corporation (hereafter, GMAC) for damages for unlawful repossession of a truck. He had purchased the truck from Schultz Buick on August 18, 1976, on a retail installment contract. GMAC financed the transaction and obtained a security interest in the truck. On two occasions one around August 1, 1977, and the other around January 18, 1978, an employee of GMAC repossessed the truck from Chischilly's residence at the Littlewater Community and removed it to Albuquerque. On neither occasion did GMAC obtain either Chischilly's consent or a tribal court order to allow it to repossess the truck. The Littlewater community is located in McKinley County in the State of New Mexico, on land owned by the United States and held in trust for the Navajo Indians. Repossession without the debtor's consent, or a tribal order, is prohibited by Navajo law.

After studying the stipulations and briefs submitted by the parties, the lower court dismissed the complaint. The court determined that New Mexico law, not Navajo tribal law, should apply and accordingly found that Chischilly had no cause of action in a New Mexico court. We reverse.

The sole issue we must decide is whether a New Mexico court should apply New

Mexico or Navajo Tribal law to repossessions which occurred on lands under the jurisdiction of the Navajo Tribe. We conclude that Navajo law should be used.

██ The trial court's ruling that the repossessions took place within the jurisdictional limits of the State of New Mexico is irrelevant in determining whether or not a New Mexico court should apply New Mexico law since the trial court also found that the lands where the repossessions occurred was under the jurisdiction of the Navajo Tribe.

> If there is a conflict between an Indian law and a state law, the state law is unenforceable on Indian land.

*Quechan Tribe of Indians v. Rowe*, 350 F.Supp. 106, 109, (S.D.Cal. 1972), *affd*, 531 F.2d 408 (9th Cir. 1976). Thus, if the dispute were wholly between Indians on land under the tribe's jurisdiction, and concerning internal matters over which the tribe had legislated, Indian law would govern, assuming a state court even had jurisdiction to hear the case. *See generally, Native American Church v. Navajo Tribal Council*, 272 F.2d 131 (10th Cir. 1959). Since the dispute is between an Indian and a non-reservation entity and arose out of repossessions which took place on Indian land, the usual conflicts of laws rules should be used to determine whose law to apply. In our deliberations, we assign the same status to the Navajo tribe as we would to another state. This is proper because, in certain respects, Indian tribes possess attributes of sovereignty akin to those of the states.

██ Indian reservations have a peculiar and unique political status in the United States. Although physically they lie under the dominion of one or several states, politically, they exist somewhat outside of the states' authority. As early as 1882, Justice Marshall wrote:

> [T]he several Indian nations [are] . . . distinct political communities, having territorial boundaries, within which their authority is exclusive.

.    .    .    .    .

*Worcester v. Georgia*, 31 U.S. 515, 557, 6 Pet. 515, 557, 8 L.Ed. 483 (1882). This principal remains essentially intact today. Absent an act of Congress, the internal affairs of the Indians are within the jurisdiction of the tribal government. *Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). The Indian tribes are free to make their own laws and be governed by them in their own territory. *Id.: Native American Church, supra.*

██ In enacting laws which regulate the manner in which goods may be repossessed in its territory, the Navajo Tribal Council was rightfully exercising its police power to insure peace on the land under its jurisdiction. The exercise of the police power is an elemental attribute of the sovereignty possessed by the Navajos. Nevertheless, the recognition of the right of the Navajos to enact their own law concerning the manner of repossession does not of itself mandate that New Mexico courts apply that law. We must be guided by the law concerning conflicts of laws.

If New Mexico and Navajo law were the same, there would be no conflicts of law issue. But, they are not the same; New Mexico had adopted the Uniform Commercial Code; the Navajos have not. Under New Mexico law, repossession of goods upon default is permissible without the consent of the debtor.

> Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace. . . .

Section 55–9–503, N.M.S.A. 1978. Under Navajo Law, however, self-help repossession of personal property is prohibited without the debtor's consent, or a tribal court order. Title 7 of the Navajo Tribal Code § 607 [1] reads:

> Repossession of personal property

> The personal property of Navajo Indians shall not be taken from land subject to

---

1. At the time of both repossessions the relevant sections of the Navajo Tribal Code were 7 N.T.C. §§ 307 and 309, now recodified as 7 N.T.C. §§ 607 and 609.

the jurisdiction of the Navajo Tribe under the procedures of repossession except in strict compliance with the following: (1) Written consent to remove the property from land subject to the jurisdiction of the Navajo Tribe shall be secured from the purchaser at the time repossession is sought. The written consent shall be retained by the creditor and exhibited to the Navajo Tribe upon proper demand. (2) Where the Navajo refuses to sign said written consent to permit removal of the property from land subject to the jurisdiction of the Navajo Tribe, the property shall be removed only by order of a Tribal Court of the Navajo Tribe in an appropriate legal proceeding.

In the event of unlawful repossession, The Tribal Code allows the wronged purchaser to recover damages.

Civil liability

Any person who violated 7 N.T.C. § 607 and any business whose employee violated such section is deemed to have breached the peace of the lands under the jurisdiction of the Navajo Tribe, and shall be civilly liable to the purchaser for any loss caused by the failure to comply with 7 N.T.C. §§ 607–609.

If the personal property repossessed is consumer goods (to wit: goods used or bought for use primarily for personal, family or household purposes), the purchaser has the right to recover in any event an amount not less than the credit service charge plus 10% of the principal amount of the debt or the time price differential plus 10% of the cash price. 7 N.T.C. § 609. The parties do not dispute that the truck was a consumer good under Navajo Law. Consequently, if Navajo law applies in this case, Chischilly is entitled to recover "not less than the credit service charge plus 10% of the principle amount of the debt or the time price differential plus 10% of the cash price." *Id.*

This is a case of first impression in New Mexico. When five years ago, a case with similar facts came before the New Mexico Supreme Court, it was remanded for determination of what law the parties, in their

contract, had agreed would govern. *Jim v. CIT Financial Services Corp.*, 87 N.M. 362, 533 P.2d 751 (1975). The question of which law to apply in the event the parties had not themselves made a choice of law was not reached. In the case before us, however, the court found that the contract made no provision as to which law should apply. This ruling is not contested on appeal. Consequently, we must determine from New Mexico choice of law rules whether to apply New Mexico or Navajo law.

The appropriate choice of law rule is found in the Uniform Commercial Code, which has been adopted in New Mexico. Sections 55–1–101 *et. seq.*, N.M.S.A. 1978. Section 9–102 of the Code [§ 55–9–102, N.M.S.A. 1978] provides the choice of law rule applicable in a case of repossession arising from a conditional sale of personal property wherein a security interest was created. It is, therefore, governing in the instant case. Section 55–9–102 reads:

(1) Except as otherwise provided in Section 9–103 [55–9–103 NMSA 1978] on multiple state transactions and in section 9–104 [55–9–104 NMSA 1978] on excluded transactions, *this article applies so far as concerns any personal property and fixtures within the jurisdiction of this state:*

(a) *to any transaction* (regardless of its form) which is *intended to create a security interest in personal property* or fixtures *including goods* . . .

. . . .

(2) *This article applies to security interests created by contract including* . . . *conditional sale.* . . . [Emphasis added.]

The exceptions in §§ 9–103 and 9–104 do not apply to the case before us. Section 9–103 [55–9–103, N.M.S.A. 1978] provides a choice of law rule governing the validity and perfection of security interests. Since those issues are not before us, Section 9–103 is not pertinent. Section 9–104 [§ 55–9–104, N.M.S.A. 1978] lists transactions not included under Article 9. The conditional sale of consumer goods wherein a security interest in the goods is created is not includ-

ed in this list. Hence, § 9–102 is the proper section to consider in the present case.

■ Other jurisdictions that have adopted the Uniform Commercial Code have interpreted § 9–102 as a choice of law rule which mandates the application of the law of the situs where the collateral is located at the time the dispute arises. *Joint Holdings & Trading Co. v. First Union National Bank,* 50 Cal.App.3d 159, 123 Cal.Rptr. 519 (1975); *Lewis v. First National Bank,* 134 Ga.App. 798, 216 S.E.2d 347 (1975); *Doyle v. Northrop Corp.,* 455 F.Supp. 1318 (D.N.J. 1978); *Associates Discount Corp. v. Cary,* 47 Misc.2d 369, 262 N.Y.S.2d 646 (1965); *Fidelity Bank & Trust Co. v. Production Metals Corp.,* 366 F.Supp. 613 (E.D.Pa.1973). Thus, the law of the place where the collateral was located at the time of repossession governs any dispute involving the repossession. *Lewis, supra; Cary, supra.* This result also has been reached in at least one jurisdiction that has not adopted the Uniform Commercial Code *Universal C.I.T. Credit Corp. v. Hulett,* 151 So.2d 705 (Ct.App.La.1963).

We believe that these jurisdictions have correctly interpreted Section 9–102. As Professor Weintraub has written:

That section 9–102 is intended as a general situs choice of law rule, not as just an indication of when forum law applies, is suggested by the first sentence of official comment 3 to that section: "In general this Article adopts the position, implicit in prior law, that the law of the state where the collateral is located should be the governing law, without regard to possible contracts in other jurisdictions."

Weintraub, *Choice of Law in Secured Personal Property Transactions: The Impact of Article 9 of the Uniform Commercial Code,* 68 Mich.L.Rev. 683, 704 (1970). Professor Cavers suggests the policy behind the situs choice of law rule in cases involving repossession.

Rules with respect to the repossession, removal and disposition of goods conditionally sold affect the orderly enjoyment and peaceful possession of property within the community. On occasion, failure to observe the local laws may lead to violence. The law of the situs at the time of repossession should clearly supply the rules governing the seller's behavior in retaking the goods . . . .

Cavers, *The Conditional Seller's Remedies and the Choice of Law Process—Some Notes on Shanahan,* 35 N.Y.U.L.Rev. 1126, 1141 (1960). In the instant case, the parties having come to no agreement to the contrary, Navajo law, that is, the law of the place where the repossession occurred, is to be used to determine the rights and liabilities of the parties with respect to the method of repossession. We do not decide here which law would apply had the parties contracted to be governed by New Mexico law as allowed by Section 1–105 [§ 55–1–105, N.M.S.A. 1978] (contracting parties may make choice of law), but contrary to Section 9–102 [§ 55–9–102, N.M.S.A. 1978] (law of situs at time of repossession governs).

■ The laws of the Navajo Tribe are entitled to full faith and credit in the Courts of New Mexico. *Jim, supra.* To rule otherwise would infringe on the Navajos' right to make their own laws and be governed by them, and would be contrary to *Williams, supra.* GMAC does not put forth any policy of the State of New Mexico, and we find none, which would be thwarted by our application of Navajo Law to a dispute involving repossession which occurred on lands under the jurisdiction of the Navajo Tribe.

■ Generally a state will not apply the penal statutes of another sovereign. *See Loucks v. Standard Oil Company,* 224 N.Y. 99, 120 N.E. 198 (1918). Chischilly argues persuasively that 7 N.T.C. § 609, the law under which he seeks damages, is not a penal statute. GMAC cites no authority to the contrary. The standard for determining whether a law is penal was set out by the United States Supreme Court in 1892.

The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual . . . .

*Huntington v. Attrill*, 146 U.S. 657, 668, 13 S.Ct. 224, 228, 36 L.Ed. 1123 (1892). Justice Cardozo further amplified the meaning of penal law.

> A statute penal ... [within the rules of private international law] is one that awards a penalty to the state ... or to a member of the public, suing in the interest of the whole community to redress a public wrong. [Cites omitted.] The purpose must be, not reparation to one aggrieved, but vindication of the public justice.... [T]he statute is not penal in the international sense ... [when] the purpose of the punishment is reparation to those aggrieved by his offense.

*Loucks, supra*, 224 N.Y. at 102–103, 120 N.E. at 198–199. The main purpose of 7 N.T.C. § 609 is to provide compensation to a person wronged by the unlawful repossession of consumer goods. *Jim v. CIT Financial Services Corp.*, 86 N.M. 784, 527 P.2d 1222 (Ct.App. 1974) (Hernandez, J., dissenting), *rev'd on other grounds*, 87 N.M. 362, 533 P.2d 751 (1975). As such Section 609 seeks to redress a private, not a public wrong. It provides reparation to an aggrieved party and is not a penal statute. It is enforceable in the New Mexico courts.

The judgment of the trial court is reversed and the cause is remanded for proceedings consistent with this opinion.

IT IS SO ORDERED.

WOOD, C. J., dissents.

HERNANDEZ, J., concurs.

WOOD, Chief Judge (dissenting).

This lawsuit presents a choice of law problem in connection with the repossession of a pickup truck at the Littlewater community. This community is located on land purchased by the United States and held in trust for the Navajo Tribe.

Plaintiff, a Navajo, purchased the pickup truck from Ken Schultz Buick-GMC, Inc. in Albuquerque. This purchase was by a written instrument entitled "INSTALMENT SALE CONTRACT". It is stipulated that defendant "financed" the purchase by extending credit to plaintiff and that the terms of the credit arrangement are contained within the contract signed by plaintiff and Ken Schultz Buick-GMC, Inc. Defendant has twice repossessed the pickup truck. Plaintiff sought damages in connection with the repossessions. In doing so, plaintiff relied on provisions of the Navajo Tribal Code. Ken Schultz Buick-GMC, Inc. was dismissed as a party by stipulation; the parties are plaintiff, the purchaser, and defendant, whose money financed the purchase. The choice of law problem presents no question concerning the rights of defendant as an assignee of the purchase contract. See § 55–9–318, N.M.S.A. 1978. The choice of law issue is presented on the basis that defendant's right of repossession is no different than the rights of Ken Schultz Buick-GMC, Inc.

The contract provided that if the buyer was in default and the seller declared the unpaid installments to be immediately due and payable, the seller might take immediate possession without demand and "may enter upon the premises where said property may be and remove same." The contract also provided that "[a]ny provision of this contract prohibited by law of any state shall as to such state be ineffective...."

The repossession provision of the contract accords with New Mexico law. See § 55–9–503, N.M.S.A. 1978. The repossession provision of the contract is inconsistent with Navajo law. 7 N.T.C. § 607 requires written consent to be secured from the purchaser at the time repossession is sought. Absent a contemporaneous written consent, the pickup truck could be removed only by order of a tribal court. If New Mexico law applied to the repossession, plaintiff's damage claims were properly dismissed; if Navajo law applied, the claims were improperly dismissed.

The question for decision, a usual one in choice of law cases, is which of two laws should be applied. However, the factual basis for answering the question is unusual. This is not a case where only one of the two laws could apply; in this case, either of the two laws could apply. New Mexico and the Navajo Tribe had concurrent jurisdiction.

The trial court ruled that the pickup was repossessed in New Mexico. "This repossession took place within the jurisdictional limits of the State of New Mexico and the jurisdictional limits of the Navajo Tribe." Plaintiff has expressly abandoned his claim that the Navajo Tribe had "exclusive authority vis a vis the State of New Mexico to control the disposition of tribal member property on land subject to Navajo jurisdiction." Abandonment of the claim that Navajo law was exclusively applicable was proper. *State Securities, Inc. v. Anderson*, 84 N.M. 629, 506 P.2d 786 (1973).

Plaintiff claims that § 55–9–102, N.M.S.A. 1978 requires that the law of the situs of the repossession governs the method of repossession. The trial court held that New Mexico law applied because New Mexico had "the most significant contacts" which was an application of the "appropriate relation" test stated in § 55–1–105, N.M.S.A. 1978. Plaintiff contends the trial court erred in applying this test. The trial court also ruled that to apply Navajo law in this case would result in one choice of law rule for persons not within any Indian jurisdiction and the possibility of a separate choice of law rule for each Indian tribe and pueblo within New Mexico. According to the trial court, this posed the possibility of at least twenty choice of law rules within New Mexico. Plaintiff does not discuss this ruling.

Sections 55–1–105 and 55–9–102, supra, are part of the Uniform Commercial Code enacted in New Mexico in 1961. As enacted, these two sections are identical to §§ 1–105 and 9–102 of the original Uniform Commercial Code. New Mexico has not adopted the 1972 amendments to 9–102 of the Uniform Commercial Code.

The portion of § 55–1–105, supra, pertinent to this case, reads:

(1) Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation, shall govern their rights and duties. Failing such agreement this act [this chapter] applies to transactions bearing an appropriate relation to this state.

(2) Where one of the following provisions of this act specifies the applicable law, that provision governs and a contrary agreement is effective only to the extent permitted by the law (including the conflict of laws rules) so specified:

\* \* \* \* \* \*

policy and scope of the article on secured transactions. Sections 9–102 [55–9–102 NMSA 1978] and 9–103 [55–9–103 NMSA 1978].

The portion of § 55–9–102, supra, pertinent to this case reads:

(1) Except as otherwise provided in Section 9–103 [55–9–103 NMSA 1978] on multiple state transactions and in Section 9–104 [55–9–104 NMSA 1978] on excluded transactions, this article applies so far as concerns any personal property and fixtures within the jurisdiction of this state:

(a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights; and also

(b) to any sale of accounts, contract rights or chattel paper.

(2) This article applies to security interests created by contract including pledge, assignment, chattel mortgage, chattel trust, trust deed, factor's lien, equipment trust, conditional sale, trust receipt, other lien or title retention contract and lease or consignment intended as security. This article does not apply to statutory liens except as provided in Section 9–310 [55–9–310 NMSA 1978].

Neither § 55–9–103 nor § 55–9–104 N.M.S.A. 1978 is applicable in this case.

Weintraub, *Choice of Law in Secured Personal Property Transactions: The Impact of Article 9 of the Uniform Commercial Code*, 68 Mich.L.Rev. 684 at 691 (1969–70) states:

If one seeks to utilize the choice-of-law provisions of the Uniform Commercial Code in order to determine what law should govern the rights and duties between a debtor and a secured creditor, he confronts many puzzles for which the solutions are not clear. The first, and perhaps most fundamental, of these Code conundrums is whether to apply the basic Code choice-of-law section, 1–105, or the article 9 choice-of-law sections, 9–102 and 9–103.

Section 1–105(1) provides the basic choice-by-law rules for the Code and thus for article 2, which covers sales. Section 1–105(2), however, indicates that the conflicts provision of 1–105(1) is superseded to the extent that the conflicts provisions of sections 9–102 and 9–103 apply to secured transactions.

This case does not involve a situation where the parties agreed to a choice of law. The trial court ruled that the contract "makes no provision as to which law should apply" and this ruling is not challenged. A New Mexico decision involving contractual choice of law does illustrate one of the conundrums to which *Weintraub*, supra, refers.

Section 55–1–105(2), supra, provides that if the policy and scope of § 55–9–102, supra, specifies the applicable law then § 55–9–102, supra, governs, and an agreement of the parties as to choice of law is effective only to the extent permitted by ·§ 55–9–102, supra. Levenberg, *Comments on Certain Proposed Amendments to Article 9 of the Uniform Commercial Code*, 56 Minn.L.Rev. 117 at 141 (1971–72) states that

the present conflict of laws provisions of Section 9–102, when read in conjunction with present Section 1–105, prohibit the parties to a secured transaction involving tangible collateral subject to Section 9–102 from selecting the law of some state other than that prescribed by Section 9–102 as the law governing any aspect of the transaction covered by a provision of Article 9 as enacted in the prescribed state.

*Jim v. CIT Financial Services Corporation*, 87 N.M. 362, 533 P.2d 751 (1975) had facts almost identical to this case. Recognizing that § 55–1–105(2) and § 55–9–102, supra, limited the right of the parties to choose an applicable law, *Jim*, supra, nevertheless held that "nothing" in § 55–9–102, supra, "indicates that, under the facts of this case, the parties were not free to choose their own law."

The view in *Jim*, supra, of the limited effect of § 55–9–102, supra, on a contractual choice of law differs from that expressed by *Levenberg*, supra. Why? These differences occur because § 55–9–102, supra, is ambiguous. *Weintraub*, supra, at 697 comments that whatever the shortcomings of § 55–1–105(1), supra, those shortcomings are minimal in comparison to § 55–9–102, supra, in which "the Code reaches its nadir with regard to both Delphic draftsmanship and regressive policy."

*Jim*, supra, and *Levenberg*, supra, give different meanings to § 55–9–102, supra. This is my starting point in determining the applicability of the "appropriate relation" test of § 55–1–105(1), supra, because the trial court was attempting to follow *Jim* in applying that test.

To what does § 55–9–102, supra, apply? The Official Comment to § 9–102 of the original Uniform Act states the "main purpose" was to bring all consensual security interests in personal property and fixtures within Article 9, except as provided in §§ 9–103 and 9–104. 3 U.L.A.–U.C.C. (Master Edition) page 20. The inclusive language of § 55–9–102, supra, is consistent with this purpose.

The Official Comment, 3 U.L.A.–U.C.C., supra, at 22, goes on to state: "In general this Article adopts the position, implicit in prior law, that the law of the state where the collateral is located should be the governing law, without regard to possible contacts in other jurisdictions." The choice of law position is stated in § 55–9–102(1), supra; the position stated in the statute is not worded as broadly as the Official Comment suggests. Section 55–9–102(1), supra, provides that Article 9 applies to personal

property within the jurisdiction of this state. To what does it apply? To transactions intended to create a security interest and to certain sales.

Neither *Jim*, supra, nor this case, involved the creation of a security interest or a sale as described in § 55–9–102(1), supra. Thus *Jim*, supra, under the language of the statute, could properly view § 55–9–102, supra, as not barring an agreement of the parties as to choice of law under § 55–1–105, supra. This view was not an aberration by our Supreme Court. *Weintraub*, supra at 702, cautions that § 55–9–102(1), supra, should not be read literally and, at 705, recognizes that "several reasonable constructions" are possible. *Levenberg*, supra, Note 37 at 138, states:

> 37. UCC § 9–102 fails to state explicitly which state's law applies when the collateral has been located in different states at various times. That is, the present provision leaves open the question—"located at what time?" The possible choices would be the law of the state where the collateral was located at the time of the signing of the security agreement, at the time of the attachment of the security interest, at the time of the perfection of the security interest or at the time a controversy arose as to rights in it.

Professor Gilmore, one of the principle drafters of the current provisions of Article 9, has stated that this silence in UCC § 9–102 "presumably . . . refers to the location of the collateral at the time the security interest attaches." 1 G. GILMORE, SECURITY INTERESTS IN PERSONAL PROPERTY 318 n.5 (1965).

Neither *Jim*, supra, nor this case, involved the signing, attachment of perfection of the security interest. Both were concerned with the choice of law applicable to repossession rights exercised in protecting the unchallenged security interest. In this situation, *Jim* found nothing in § 55–9–102, supra, which barred the applicability of the choice of law provisions in § 55–1–105, supra. It should be noted that the 1972 amendments to § 9–102 of the Uniform Commercial Code attempted to correct the ambiguity in the original Code by certain deletions. These deletions were for the purpose of correcting an "incomplete statement" and to "make applicable the general choice of law principles of Section 1–105". 3 U.L.A.–U.C.C. (1980 Pamphlet) page 8, "Official Reasons for 1972 Change". Thus, the 1972 amendments approach the interpretation placed on § 55–9–102, supra, in *Jim*.

This Court, as well as the trial court, is to follow decisions of the Supreme Court. *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973). Accordingly, the trial court proceeded properly in applying *Jim*, in considering that § 55–9–102, supra, did not apply to the facts, in applying § 55–1–105(1), supra, and there being no agreement by the parties as to choice of law, in applying the "appropriate relation" test.

Plaintiff contends that the trial court misapplied the "most significant contacts" test. Section 55–1–105(1), supra, does not use the words "most significant contacts"; rather, the statutory words are "appropriate relation to this state." I do not determine whether the phrases have different meanings; it is unnecessary to do so.

Plaintiff recognizes that the contract was negotiated and entered in Albuquerque, and that Ken Schultz Buick-GMC, Inc.'s and defendant's businesses were located in Albuquerque. Plaintiff seems to argue that the "appropriate relation" was with the Navajo Tribe because plaintiff is a Navajo and the acts of repossession occurred at the Navajo community of Littlewater. However, plaintiff makes no effort to demonstrate that the Navajo relationship is more appropriate than New Mexico's and disregards the fact that all of the relationships in this case occurred in New Mexico even though some also occurred in an Indian community within New Mexico.

It is unnecessary to decide the basis for the appropriate relation test. The essence of plaintiff's argument is that an appropriate relation test is inapplicable because § 55–9–102, supra, applies; that under that section, "appellee's rights of repossession

are *not* governed by New Mexico law but instead this court is required to look instead to the Navajo Tribal Code (7 N.T.C. § 607) regarding appellee's rights at the time of each repossession."

The basis for this argument is that § 55–9–102, supra, means more than the words used in the statute. *Levenberg*, supra, at 140–41, takes this view in suggesting that § 55–9–102, supra, applies to "any aspect" of a transaction governed by Article 9 of our Uniform Commercial Code. Several decisions have held the choice of law provision of § 55–9–102, supra, applicable in repossession or security foreclosure situations. *Fidelity Bank & T. Co. of N.J. v. Production Metals Corp.*, 366 F.Supp. 613 (E.D.Penn.1973); *Associates Discount Corp. v. Cary*, 47 Misc.2d 369, 262 N.Y.S.2d 646 (1965); see *Doyle v. Northrop*, 455 F.Supp. 1318 (D.N.J.1978). Although this interpretation is contrary to *Jim*, supra, I will assume, in answering plaintiff's contention, that § 55–9–102, supra, applied to the repossessions in this case.

In contending for the applicability of § 55–9–102, supra, plaintiff relies on the applicability of Article 9 to "personal property ... within the jurisdiction of this state." This is a New Mexico statute. For the statute to be applicable, the pickup truck must have been within New Mexico's jurisdiction. The trial court ruled that the pickup truck was within New Mexico's jurisdiction. This being so, if § 55–9–102 applied, then § 55–9–503, supra, an Article 9 provision, applied and authorized the repossessions.

Plaintiff contends that § 55–9–102, supra, compels the application of Navajo law rather than New Mexico law. His view is that § 55–9–102, supra, is a situs rule, that the law of the situs controls repossession rights. Assuming, but not deciding, that § 55–9–102, supra, does more than state when New Mexico law applies and adopts a situs rule by implication, plaintiff does not benefit. The site of the pickup truck in this case was within two jurisdictions. If § 55–9–102, supra, adopts a situs rule, it does not choose between two different situs rules, both of which apply to the particular location. Because the laws of two jurisdictions apply to the situs in this case, any situs rule in § 55–9–102, supra, does not resolve the choice of law question, and § 55–1–105(1), supra, applies.

The foregoing has answered plaintiff's attack on the trial court's ruling and sustains the trial court's judgment of dismissal. I also, as an independent ground, would affirm the trial court's application of New Mexico law to the repossession as a matter of policy.

What plaintiff seeks is the application of Navajo law to the repossession and the exclusion of New Mexico law. The trial court pointed out that each Indian tribe and pueblo might have a repossession law different from New Mexico's and that if plaintiff's view should prevail, there could be some twenty different repossession rules applicable within the boundaries of this state. The trial court rejected this view and so do I.

*Jim*, supra, held that the full faith and credit provisions applied to the laws of the Navajo nation; I assume that this same result would be reached for all Indian tribes and pueblos within New Mexico. However, full faith and credit need not be given where "a foreign legislative enactment or statute is sought to be enforced in the forum state. A forum state need not subordinate its own statutory policy to a conflicting public act of another state." As a matter of policy, New Mexico need not, because of the full faith and credit clause, enforce Indian laws on repossession contrary to the statutory policy of New Mexico expressed in § 55–9–503, supra.

The underlying purpose of New Mexico, in adopting its version of the Uniform Commercial Code, was to "simplify" the law governing commercial transactions and to "make uniform" the law among the various jurisdictions. Section 55–1–102, N.M.S.A. 1978. New Mexico's purpose of simplification and uniformity would not be furthered by enforcing each variation on the law of repossession adopted by Indian tribes and pueblos located within the boundaries of New Mexico.

The trial court's order of dismissal should be affirmed.