1997-NMCA-098

946 P.2d 1088

**Wilson HALWOOD, Jr. and Lorena Halwood, Plaintiffs–Appellants,**

v.

**COWBOY AUTO SALES, INC. and Bruce Williams, Defendants–Appellees.**

**No. 17566.**

Court of Appeals of New Mexico.

May 20, 1997.

Certiorari Denied Sept. 24, 1997.

Richard N. Feferman, Susan Warren, Law Offices Of Richard N. Fererman, Albuquerque, for Plaintiffs–Appellants.

Lana E. Marcussen, Albuquerque, for Defendants–Appellees.

## OPINION

PICKARD, Judge.

1. On motion for rehearing, the opinion filed April 30, 1997, is withdrawn, and the following opinion is substituted in its place. The motion for rehearing is otherwise denied, and the motion to strike is denied.

2. A Navajo Tribal Court (tribal court) granted Indian Plaintiffs a default judgment of compensatory, statutory, and punitive damages for non-Indian Defendants' wrongful repossession of Plaintiffs' car from the reservation. Plaintiffs then sought to enforce the judgment in the McKinley County District Court (district court). That court enforced the judgment, except for the punitive damages. Determining that the punitive damages were penal in nature, the district court reasoned that the Navajo court was without jurisdiction to award them against non-Indians. The question before us is whether New Mexico courts should recognize punitive damages awarded against non-Indian defendants in a Navajo tribal court for conduct on the Navajo reservation. We conclude that the punitive damages awarded in this case are not penal in the criminal sense and thus fall within the Navajo tribal court's jurisdiction. We hold that New Mexico courts should recognize such judgments from tribal courts under the doctrines of full faith and credit or comity. Accordingly, we reverse.

## BACKGROUND/PROCEDURAL HISTORY

3. The following facts are taken from the Findings of Fact and Conclusions of Law and Judgement entered by default by the District Court of the Navajo Nation, Chinle, Arizona, on January 27, 1992, No. CH–CV–71–91. Plaintiffs are enrolled members of the Navajo Tribe. They bought a used car from Defendant Cowboy Auto Sales on November 2, 1989. Defendant Bruce Williams personally sold the car to the Plaintiffs. On November 30, 1990, Defendants repossessed the car from Plaintiffs' residence on the Navajo reservation near Chinle, Arizona, when Plaintiffs were not at home and removed it from Navajo territorial jurisdiction. Defendants repossessed the car without first receiving Plaintiffs' written consent or a valid Navajo tribal court order permitting the repossession. The Navajo Tribal Code allows repossession of Navajo Indians' personal property from tribal territory only if the buyer con-

sents in writing or the creditor first obtains a valid tribal court order. Navajo Tribal Code tit. 7, § 607 (1977). Defendants entered Plaintiffs' realty without Plaintiffs' consent and against their will. Plaintiffs then requested the return of their vehicle, but Defendants refused, thereafter selling the vehicle and converting the proceeds.

4. Plaintiffs sued Defendants in the Chinle District Navajo Tribal Court, complaining of illegal repossession, trespass, and conversion. Plaintiffs claimed statutory damages for illegal repossession, compensatory damages for trespass to their realty and for conversion of their car, attorney fees, interest, and, most relevant to this appeal, punitive damages.

5. Each Defendant was properly served with the complaint and a summons to the tribal court. Defendants, however, failed to plead or answer Plaintiffs' complaint. Plaintiffs then moved for default judgment against Defendants and sent Defendants a notice of default. Defendants did not respond to this and later notices of default, and the tribal court eventually entered a default judgment against them in favor of Plaintiffs.

6. The tribal court judgment granted Plaintiffs approximately $5,000 in interest, costs, compensatory and statutory damages, and attorney fees. The tribal court also granted Plaintiffs $25,000 in punitive damages, finding that Defendants willfully chose to disregard Navajo law when they repossessed Plaintiffs' car, in willful, wanton, and deliberate violation of Plaintiffs' rights. The tribal court based the decision to award punitive damages on the fact that Defendants had illegally repossessed cars from other Navajos in the same way and had even suffered judgments in those other cases that included punitive damages. Those judgments were entered prior to Defendants' actions in this case. The tribal court concluded that Defendants undoubtedly knew Navajo Nation laws regarding repossession because of their litigation experience, and therefore knew this repossession was illegal, but Defendant chose instead to disregard Navajo law and the rights of Plaintiffs, as well as the rights of the people of the Navajo Nation.

7. Plaintiffs filed an action in the McKinley County District Court to enforce their judgment under the New Mexico Foreign Judgments Act, NMSA 1978, Section 39–4A–3 (Cum.Supp.1996). Defendants made no effort to declare the entire judgment void for lack of tribal court jurisdiction; Defendants offered no evidence to contradict the jurisdictional findings in the tribal court judgment. The district court issued an order granting full faith and credit to the judgment, but vacating the punitive damages. In deciding to vacate the punitive damages, the district court relied on *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978), reasoning that due to the penal nature of punitive damages, the Navajo Nation lacked jurisdiction to impose punitive damages on nonmembers of the Navajo Tribe.

8. Plaintiffs appeal the order vacating the grant of punitive damages. Defendants did not cross-appeal from that part of the district court order enforcing the remainder of the tribal court judgment. We reverse.

*DISCUSSION*

*Full Faith and Credit*

9. Plaintiffs contend that the district court erred in holding that the Navajo Tribal Court lacked jurisdiction to impose punitive damages on a non-member who was otherwise subject to the Navajo court's jurisdiction. Defendants acknowledge that under present New Mexico case law, the power to award punitive damages may be within the Navajo Tribal Court's subject matter jurisdiction. If the Navajo Tribal Court has subject matter jurisdiction here, our precedents require granting full faith and credit to its judgment awarding punitive damages. In *Jim v. CIT Financial Services Corp.*, 87 N.M. 362, 363, 533 P.2d 751, 752 (1975), the New Mexico Supreme Court held that "the laws of the Navajo Tribe of Indians are entitled by Federal Law, 28 U.S.C. § 1738, to full faith and credit in the Courts of New Mexico because the Navajo Nation is a 'territory' within the meaning of that statute."

10. Defendants answer that New Mexico recognition of punitive damages as being within the jurisdiction of the Navajo tribe would violate Defendants' federal due pro-

cess and equal protection rights under *Duro v. Reina*, 495 U.S. 676, 110 S.Ct. 2053, 109 L.Ed.2d 693 (1990). *Duro* addressed the question of whether an Indian tribe had criminal jurisdiction over a nonmember Indian. The Supreme Court answered this question in the negative, holding that the dependent status of Indian tribes made their criminal prosecution of a non-member Indian inconsistent with the non-member's rights as a United States citizen. *Id.* at 697, 110 S.Ct. at 2065. Congress has subsequently superseded the holding in *Duro* and expanded the criminal authority of Indian tribes. *See State v. Pena*, 117 N.M. 528, 530, 873 P.2d 274, 276 (Ct.App.1994) (for a discussion of 25 U.S.C.A. § 1301(2)). That congressional action erodes Defendants' reliance on *Duro*.

11. Primarily however, Defendants' reliance on *Duro* is misplaced because *Duro* is a criminal case. This fact creates a large difference between the issues there and the issue present here, most notably the difference between imposing criminal penalties and imposing civil punitive damages. In *Chischilly v. General Motors Acceptance Corp.*, 96 N.M. 264, 269, 629 P.2d 340, 345 (Ct.App.1980), *rev'd on other grounds*, 96 N.M. 113, 628 P.2d 683 (1981) (quoting *Loucks v. Standard Oil Co.*, 224 N.Y. 99, 120 N.E. 198, 198–99 (1918)), we said:

> A statute penal ... [within the rules of private international law] is one that awards a penalty to the state ... or to a member of the public, suing in the interest of the whole community to redress a public wrong. [Cites omitted] The purpose must be, not reparation to one aggrieved, but vindication of the public justice.... [T]he statute is not penal in the international sense ... [when] the purpose of the punishment is reparation to those ·aggrieved by his offense.

*See also Svejcara v. Whitman*, 82 N.M. 739, 741, 487 P.2d 167, 169 (Ct.App.1971) ("Punitive damage serves a civil end to an individual, while criminal sanctions serve a criminal end to the public."). In *Chischilly*, this Court held that 7 N.T.C. § 609, which provided statutory damages for wrongful repossessions, was not penal, and therefore was entitled to full faith and credit under *Jim.*

*Chischilly*, 96 N.M. at 268–69, 629 P.2d at 344–45.

12. The analysis in *Chischilly* applies here. Granting punitive damages to Plaintiffs was not an imposition of criminal penalties upon Defendants by the Navajo Tribal Court. The punitive damages were reparation to Plaintiffs aggrieved by Defendants' wrongful repossession. In no way did granting the punitive damages to Plaintiffs amount to awarding a penalty to the Navajo tribe.

13. The district court based its decision to vacate the punitive damages award on *Oliphant*, 435 U.S. 191, 98 S.Ct. 1011, reasoning that the penal nature of punitive damages made the tribal court without jurisdiction to impose them on a non-member. In *Oliphant*, two non-Indian residents of the Suquamish Indian Tribe's Reservation in Port Madison, Washington, were arrested and charged with criminal offenses. *Id.* at 194, 98 S.Ct. at 1013. They applied for writs of habeas corpus in federal court, arguing that the Suquamish Indian Provisional Court did not have criminal jurisdiction over non-Indians. *Id.* The Supreme Court stated that, "[b]y submitting to the overriding sovereignty of the United States, Indian tribes therefore necessarily give up their power to try non-Indian citizens of the United States except in a manner acceptable to Congress." *Id.* at 210, 98 S.Ct. at 1021.

14. *Oliphant*, then, announced limits on tribal power to try non-Indians in criminal proceedings. The basis for that limitation is found in the following language in *Duro*, 495 U.S. at 693, 110 S.Ct. at 2063: "Criminal trial and punishment is so serious an intrusion on personal liberty that its exercise over non-Indian citizens was a power necessarily surrendered by the tribes in their submission to the overriding sovereignty of the United States." But that sort of power is not at issue in this case. Punitive damages are a matter of civil law. *Cf. Green Tree Acceptance, Inc. v. Layton*, 108 N.M. 171, 174, 769 P.2d 84, 87 (1989) (punitive damages appropriate for tort of conversion). Civil jurisdiction over the activities of non-Indians on reservation lands, engaged in pursuant to consensual commercial or contractual ar-

rangements, presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute. *Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. 9, 18, 107 S.Ct. 971, 977, 94 L.Ed.2d 10 (1987). In *LaPlante,* the Supreme Court denied a non-Indian defendant insurance company a declaration that it had no duty to defend a suit by Indian plaintiffs seeking compensatory and punitive damages in tribal court. *Id.* at 11, 107 S.Ct. at 973. The Supreme Court explained that although criminal jurisdiction of tribal courts was subject to substantial federal limitation, their civil jurisdiction was not similarly restricted. *Id.* at 15, 107 S.Ct. at 975. We are aware of no treaty or federal statute divesting tribal courts of the power to impose civil punitive damages upon non-Indian defendants whose conduct occurs on reservation lands, and Defendants point us to none.

15. Defendants do argue, however, that any reliance on *LaPlante* is seriously eroded by the United States Supreme Court's recent decision in *Strate v. A–1 Contractors,* 520 U.S. 483, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997). We disagree for two reasons. First, the Court in *Strate* was careful to emphasize that the land on which the incident in that case arose was a state highway, and the Court expressed no opinion on whether the same result would obtain if the incident arose on a tribal road within the reservation. *Id.* at ——, 117 S.Ct. at 1408. Here, the repossession which underlay the tribal court judgment occurred at Plaintiffs' residence on the reservation.

■ 16. Second, the Court in *Strate* reaffirmed the basic *LaPlante* proposition saying, "where tribes possess authority to regulate the activities of nonmembers, '[c]ivil jurisdiction over [disputes arising out of] such activities presumptively lies in the tribal courts.' " *Strate,* 520 U.S. at ——, 117 S.Ct. at 1413 (quoting *LaPlante,* 480 U.S. at 18, 107 S.Ct. at 977). Tribes possess such authority over the activities of nonmembers who enter consensual relationships with the tribes' members through commercial dealings and contracts. *Strate,* 520 U.S. at ——, 117 S.Ct. at 1415; *see Washington v. Confederated Tribes of the Colville Indian*

*Reservation,* 447 U.S. 134, 152–53, 100 S.Ct. 2069, 2080–81, 65 L.Ed.2d 10 (1980). "[T]ribes retain considerable control over nonmember conduct on tribal land." *Strate,* 520 U.S. at ——, 117 S.Ct. at 1413. It therefore follows that tribes possess adjudicative authority over the regulated on-reservation activities of nonmembers when those activities are purportedly justified by the contract, but are in fact contrary to the express provisions of the tribal code.

17. Defendants also argue that federal cases have held punitive damages against non-Indians to be outside the jurisdiction of tribal courts. The example they cite that comes closest to such a holding is *UNC Resources, Inc. v. Benally,* 514 F.Supp. 358 (D.N.M.1981). That case involved a spill of uranium tailings that allegedly injured the livestock of several Navajos and caused other harm. *Id.* at 360. The only areas affected, however, were off the reservation. *Id.* The court merely stated that the tribal court's civil authority over non-Indians stopped at the reservation boundary. *Id.* at 362. Here, the tortious conduct occurred on the reservation, and *Benally* is therefore easily distinguished.

18. We believe that a more appropriate federal case is *Babbitt Ford, Inc. v. Navajo Indian Tribe,* 710 F.2d 587 (9th Cir.1983), *cert. denied,* 466 U.S. 926, 104 S.Ct. 1707, 80 L.Ed.2d 180 (1984). There, the court said, "[t]ribal power includes 'a broad measure of civil jurisdiction over the activities of non-Indians on Indian reservation lands in which the tribes have a significant interest.' " *Id.* at 601 (quoting *Washington v. Confederated Tribes of the Colville Indian Reservation,* 447 U.S. 134, 153, 100 S.Ct. 2069, 2081, 65 L.Ed.2d 10 (1980)). *Babbitt Ford, Inc.* upheld the tribe's authority to impose a statutory measure of damages, above mere compensation, on a car dealer that wrongfully repossessed a vehicle. *Id.* The lower court held that the measure, not being compensatory, was penal and therefore within the prohibition on tribal court jurisdiction. *Id.* at 600. The Ninth Circuit disagreed and held that the statutory damage award, being similar to statutes in both Arizona and New Mexico, as well as other consumer legisla-

tion, was within the jurisdiction of the tribal courts. *Id.* at 601. The same may be said with regard to the punitive damage award here.

■ 19. Defendants also allege in their brief, for the first time in almost six years of litigation, that Defendants repossessed the car in Gallup, New Mexico, while Plaintiffs were shopping, and then drove Plaintiffs to their home on the reservation as a matter of courtesy. Defendants allege these facts to the wrong court. Matters not of record are not reviewable for the first time on appeal. *See Morningstar Water Users Ass'n, Inc. v. Farmington Mun. Sch. Dist. No. 5,* 120 N.M. 307, 320, 901 P.2d 725, 738 (1995). Defendants made no effort to elicit this factual predicate either before the tribal court or before the district court by way of a jurisdictional challenge to enforcement of the judgment. *See generally Thoma v. Thoma,* 123 N.M. 137, 934 P.2d 1066 (1996), *cert. denied,* 122 N.M. 808, 932 P.2d 498 (1997). Although we may consider challenges to subject matter jurisdiction for the first time on appeal, we must do so on the basis of the record previously developed. *See State v. Thomas,* 113 N.M. 298, 300, 825 P.2d 231, 233 (Ct.App. 1991). As such, we decline to address any importance these allegations may have to this case.

■ 20. The Navajo Tribal Court's decision to grant punitive damages in this case is not at odds with New Mexico law on the subject. Punitive damages may be awarded where the wrongdoer's conduct is " 'maliciously intentional, fraudulent, oppressive, or committed recklessly or with a wanton disregard of the plaintiffs' rights.' " *Green Tree Acceptance, Inc.,* 108 N.M. at 174, 769 P.2d at 87 (action for conversion will sustain award of punitive damages) (quoting *Loucks v. Albuquerque,* 76 N.M. 735, 747, 418 P.2d 191, 199 (1966)). The Navajo Tribal Court granted Plaintiffs punitive damages because Defendants intentionally repossessed the car in blatant disregard of Plaintiffs' rights. An award of punitive damages is entitled to full faith and credit where the law of the jurisdiction awarding the punitive damages does not conflict with the law of the jurisdiction enforcing the judgment. *Cf. Ault v. Bradley,*

564 So.2d 374, 379 (La.Ct.App.) (absent showing law of jurisdiction rendering judgment of punitive damages differs from law of jurisdiction enforcing them, forum presumes law to be the same and grants full faith and credit), *cert. denied,* 569 So.2d 967 (La.1990). Here, since the Navajo Tribal Court awarded punitive damages for conduct for which New Mexico would grant them, there are no differing laws on the subject to bar granting full faith and credit.

■ 21. Based on the foregoing analysis, the judgment for punitive damages Plaintiffs sought to enforce in district court was not penal in nature in the sense of imposing criminal penalties. It follows that under the Supreme Court's pronouncement in *La-Plante* of presumptive civil jurisdiction in tribal courts over non-Indians on reservation lands, the Navajo Tribal Court had jurisdiction to impose punitive damages on Defendants. We therefore hold that an award of punitive damages against a non-Indian for conduct occurring on a Navajo reservation is entitled to full faith and credit in New Mexico courts.

■ 22. Defendants go to great lengths in arguing that *Jim* wrongly decided that the Navajo Nation was a "territory" within the meaning of 28 U.S.C. § 1738, and that New Mexico was thus required to give Navajo law full faith and credit. Defendants suggest that we should reconsider *Jim,* reverse it, and adopt a rule of comity for enforcing tribal court judgments. Once again, Defendants address their argument to the wrong court. This Court is bound by precedents of the New Mexico Supreme Court. *State v. Wilson,* 116 N.M. 793, 796, 867 P.2d 1175, 1178 (1994). But even if we did adopt a rule of comity, the result would be the same for Defendants.

*Comity*

■ 23. In *Watson v. Blakely,* 106 N.M. 687, 690, 748 P.2d 984, 987 (Ct.App.1987), *overruled on other grounds by Kelly Inn No. 102 Inc. v. Kapnison,* 113 N.M. 231, 239, 824 P.2d 1033, 1041 (1992), the Court said:

Under the doctrine of comity, state courts recognize foreign judgments where

the proceedings on which the judgment is based are not contrary to the public policy of the forum, where the judgment sought to be recognized was rendered under circumstances wherein the foreign court had jurisdiction over the subject matter and the parties, and where the parties were given an opportunity for a full and fair hearing on the issues.

24. As we have determined, civil jurisdiction over the activities of non-Indians, engaged in pursuant to consensual commercial or contractual arrangements on reservation lands, presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute. *Strate,* 520 U.S. at ——, 117 S.Ct. at 1413; *LaPlante,* 480 U.S. at 18, 107 S.Ct. at 977. Punitive damages are a matter for civil law. The Navajo Tribal Court therefore had subject matter jurisdiction on the question of punitive damages in this case. As for personal jurisdiction, Defendants were properly served with process, but chose to default, thereby declining the opportunity to be heard. Defendants do not argue any facts in the record to show the Navajo Tribal Court lacked personal jurisdiction over them. Nor do they allege extrinsic fraud in the way Plaintiffs' obtained personal jurisdiction over them. We therefore conclude that the Navajo Tribal Court had both personal and subject matter jurisdiction in Defendants' case.

25. Imposition of punitive damages, furthermore, in a case such as this, is perfectly consistent with New Mexico public policy. *See Green Tree Acceptance, Inc.,* 108 N.M. at 174, 769 P.2d at 87. It follows that there is no reason to withhold comity from the Navajo Tribal Court's decision to grant punitive damages to Plaintiffs. We therefore hold that the Navajo Tribal Court's decision granting Plaintiffs punitive damages for the wrongful repossession of their car by Defendants is entitled to comity.

## CONCLUSION

26. The district court erred in refusing to enforce the Navajo Tribal Court judgment granting Plaintiffs punitive damages against Defendants on the grounds that the tribal court lacked jurisdiction. We therefore reverse the order of the district court vacating the Navajo Tribal Court's award of punitive damages and remand with instructions for the district court to enforce the entire judgment.

27. **IT IS SO ORDERED.**

APODACA, J., concurs.

BOSSON, J., specially concurs.

BOSSON, Judge (specially concurring).

28. I concur in the opinion of the Court and write separately only out of concern for what I regard as dubious authority accredited to *Jim v. CIT Financial Services Corp.,* 87 N.M. 362, 533 P.2d 751 (1975). The question whether tribal laws and judgments should be analyzed under statutory full faith and credit, or under the more flexible principle of comity, is far from settled nation-wide. Although *Jim* appears to grant statutory full faith and credit to tribal laws, its actual holding is far narrower and there is little discussion of this complex issue. Scholarly commentary places that conclusion in doubt. As former Professor, now Judge, Canby writes: "Despite some argument over the matter, it is probable that tribal court judgments do not fall within that terminology," referring to full faith and credit. William C. Canby, Jr., *American Indian Law* 173 (2d ed. 1988); *see* Felix S. Cohen, *Handbook of Federal Indian Law* 385 (1982); Fred L. Ragsdale, Jr., *Problems in the Application of Full Faith and Credit for Indian Tribes,* 7 N.M. L.Rev. 133 (1977). The more persuasive authority seems to prefer comity, in part because of the greater flexibility it affords both state and tribal courts. As much as this Court is obliged to follow *Jim* and its progeny, I would urge our Supreme Court to undertake a fresh examination of this issue, probably in another case with a more informative record, in light of more recent authority and changing state-tribal dynamics. Our state is ill-served by looking only to the past for guidance on this important issue that poses perplexing challenges for our judiciary well into the future.