This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38014

**ONAWA HAYNES,**

Plaintiff-Appellant,

v.

**ISAAC LUJAN, STUART PAISANO,
and BONNIE LOVATO, in their
individual capacities,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY
John F. Davis, District Judge**

Law Office of George Geran
George T. Geran
Santa Fe, NM

for Appellant

Keleher & McLeod, P.A.
David W. Peterson
Thomas C. Bird
Albuquerque, NM

for Appellees

### MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** Plaintiff Onawa Haynes appeals the district court's dismissal of her claims against three Defendants, two of whom are tribal members, arising from her employment as the Pueblo of Sandia Tribal Court Administrator. The district court granted Defendants' motion to dismiss for lack of subject matter jurisdiction, concluding

that the exercise of state court jurisdiction would infringe on the Tribe's self-governance. We affirm.

## STANDARD OF REVIEW

**{2}** "In reviewing an appeal from an order granting or denying a motion to dismiss for lack of jurisdiction, the determination of whether jurisdiction exists is a question of law which an appellate court reviews de novo." *Hamaatsa, Inc. v. Pueblo of San Felipe*, 2017-NMSC-007, ¶ 17, 388 P.3d 977 (internal quotation marks and citation omitted). Because Defendants mounted a factual attack to subject matter jurisdiction, as opposed to a facial challenge, the district court was not permitted to presume the truthfulness of the complaint's factual allegations; instead, the court was free to weigh the evidence and resolve disputed jurisdictional facts. *South v. Lujan*, 2014-NMCA-109, ¶¶ 8-9, 336 P.3d 1000. To the extent Plaintiff challenges the district court's jurisdictional findings and conclusions, "we use the substantial evidence standard for review of the facts and then conduct a de novo review of the trial court's application of the law to those facts." *Allen v. Timberlake Ranch Landowners Ass'n*, 2005-NMCA-115, ¶ 13, 138 N.M. 318, 119 P.2d 743.

## BACKGROUND

**{3}** Plaintiff alleges that Defendants Isaac Lujan and Stuart Paisano, the Pueblo's governor and lieutenant governor, sexually harassed and retaliated against her while she was employed with the Pueblo's Tribal Court. After she resigned, Plaintiff filed a complaint in state district court against Lujan, Paisano, and Defendant Bonnie Lovato, the employee relations manager for the Pueblo's Human Resources Department, in their individual capacities, alleging causes of action for (1) unlawful gender discrimination in violation of the New Mexico Human Rights Act; (2) wrongful termination and retaliatory discharge; (3) tortious interference with contract; and (4) violation of the New Mexico Fraud Against Taxpayers Act. Defendants responded by filing a motion to dismiss for lack of subject matter jurisdiction, arguing that the district court lacked jurisdiction to adjudicate claims against tribal members arising on tribal lands under the "infringement test" developed from *Williams v. Lee*, 358 U.S. 217, 220 (1959). Plaintiff countered that jurisdiction was proper in the district court in light of the Supreme Court's more recent holding in *Lewis v. Clarke*, ___ U.S. ___, 137 S. Ct. 1285 (2017).

**{4}** The district court granted Defendants' motion and made the following factual findings:

1.   The Pueblo of Sandia is a sovereign, federally recognized Indian Tribe.

2.   Plaintiff's claims arise from her employment as the Pueblo of Sandia Tribal Court Administrator[.]

3. When Plaintiff, a non-member Indian, resigned from her position as the Tribal Court Administrator, Defendants Isaac Lujan and Stuart Paisano served as Governor and L[ieutenant] Governor of the Pueblo of Sandia.

4. The Lt. Governor's duties include judicial functions equivalent to that of a [T]ribal [C]ourt [J]udge. In this position, the Lt. Governor supervised the Tribal Court Administrator and other [T]ribal court staff.

5. Defendant Bonnie Lovato, a non-Indian, worked for the Pueblo of Sandia as a human resources manager.

6. Claims against Bonnie Lovato arose from her employment as the Employee Relations Manager, in the Human Resources Department located within the Pueblo of Sandia[.]

7. Plaintiff and Defendants all had a contractual relationship or official relationship with the Pueblo[.]

8. Plaintiff asserts various state law claims based on alleged creation of a hostile work environment, and employment retaliation[.]

Plaintiff states in her brief in chief that "none of those findings are challenged by Plaintiff" and thus, these findings are binding on appeal. *Seipert v. Johnson*, 2003-NMCA-119, ¶ 26, 134 N.M. 394, 77 P.3d 298.

**{5}** The district court also found that even though some of the alleged acts occurred outside the boundaries of the Pueblo, Plaintiff's work environment was situated within the exterior bounds of the Pueblo and the alleged off-Pueblo conduct did not create subject matter jurisdiction. The district court concluded:

12. Plaintiff's claims arose within the Pueblo, and implicate[] the operations of the Pueblo of Sandia Tribal Court, a fundamental component of the Pueblo's government[.]

13. The State of New Mexico's regulation of the Pueblo's employment within the Pueblo's [T]ribal [C]ourt infringes on the [T]ribe's self-governance.

14. *Lewis v. Clarke* provides no basis for [r]econsideration. *Williams* and its progeny are still good law, and apply to this case.

Plaintiff appeals.

**DISCUSSION**

**{6}** Plaintiff advances two general claims of error. First, she argues that the district court erred by applying the infringement test articulated in *Williams* because, in her view, *Williams* was overruled by *Lewis*. Plaintiff argues in the alternative that if *Williams* was not overruled, jurisdiction is still proper in state court. We address each of Plaintiff's arguments in turn.

## I.    *Lewis* Did Not Overrule *Williams*

**{7}** "The test for determining whether a state court has jurisdiction over causes of action involving Indian matters is set forth in *Williams*[.]"[1] *Found. Rsrv. Ins. Co. v. Garcia*, 1987-NMSC-024, ¶ 6, 105 N.M. 514, 734 P.2d 754. In *Williams*, the Supreme Court stated that "absent governing [a]cts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them." 358 U.S. at 220. "This language has become known as the infringement test." *Found. Rsrv. Ins. Co.*, 1987-NMSC-024, ¶ 6.

**{8}** Plaintiff argues on appeal that the Supreme Court partially overruled the *Williams* infringement test in *Lewis*, and whether state courts have subject matter jurisdiction now depends only on whether the defendants were sued in their individual capacities, rather than their official capacities. In the district court, however, Plaintiff's counsel acknowledged that he "was mistaken when [he] argued that [the] *Williams v. Lee* infringement analysis was over-ruled by *Lewis v. Clarke*" and that such mistake arose because counsel conflated the infringement doctrine, recognized in *Williams*, with tribal sovereign immunity, discussed in *Lewis*. He then quoted extensively from the New Mexico Supreme Court's opinion in *Hamaatsa*, 2017-NMSC-007, ¶¶ 26-27, which discussed the difference between the two doctrines. For the reasons that follow, we view Plaintiff's position in the district court as essentially correct, and therefore reject the contradictory argument her counsel makes on appeal.[2]

**{9}** At issue in *Williams* was whether an Arizona state court could exercise jurisdiction over a lawsuit brought by a non-Indian who operates a general store on the Navajo Indian Reservation against "a Navajo Indian and his wife who live on the Reservation, to collect for goods sold them there on credit." *Williams*, 358 U.S. at 218. The Supreme Court held that

> [t]here can be no doubt that to allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves. It is immaterial that [the party who initiated the lawsuit] is not an Indian. He

---

[1]We use the term "Indian" in this opinion because that is the term used in *Williams* and subsequent controlling authority describing the infringement test.

[2]Plaintiff's reliance on a contradictory argument on appeal would ordinarily bar appellate review, but we nevertheless address the argument because it raises a question of subject matter jurisdiction. *See Zarges v. Zarges*, 1968-NMSC-151, ¶ 14, 79 N.M. 494, 445 P.2d 97 ("Under ordinary circumstances a party is not permitted to take a position in the court below and, thereafter, to take a contrary position on appeal. However, the rule is otherwise when jurisdiction is involved."). However, we remind counsel that such vacillation hinders our review. *See South*, 2014-NMCA-109, ¶ 13.

was on the Reservation and the transaction with an Indian took place there. *The cases in this Court have consistently guarded the authority of Indian governments over their reservations*.

*Id.* at 223 (emphasis added). And New Mexico's courts have consistently relied on *Williams* for the proposition that state courts lack civil jurisdiction over lawsuits that infringe on tribal self-government. *See, e.g.*, *Hinkle v. Abeita*, 2012-NMCA-074, ¶ 4, 283 P.3d 877.

**{10}** In *Lewis*, by contrast, the Supreme Court addressed whether the defendant, a tribal employee who caused an accident while driving a limousine on an interstate highway within the scope of his employment, was entitled to sovereign immunity. ___ U.S. at ___, 137 S. Ct. at 1289, 1291. The injured plaintiffs brought a negligence action in state court against the defendant employee in his individual capacity, who in turn asserted that the suit was barred by the Indian tribe's sovereign immunity. *Id.* at ____ , 137 S. Ct. at 1288. The Court reasoned that "[t]he identity of the real party in interest dictates what immunities may be available. . . . But sovereign immunity does not erect a barrier against suits to impose individual and personal liability." *Id.* at 1291 (internal quotation marks and citations omitted). Applying this general rule, the Supreme Court concluded the defendant employee was not entitled to a sovereign immunity defense, stating that

> [t]he suit is brought against a tribal employee operating a vehicle within the scope of his employment but on state lands, and the judgment will not operate against the Tribe. This is not a suit against [the defendant] in his official capacity. It is simply a suit against [the defendant] to recover for his personal actions, which will not require action by the sovereign or disturb the sovereign's property.

*Id.* (internal quotation marks and citation omitted). The Supreme Court did not discuss *Williams*, nor was there any need to as the question of infringement was not at issue; *Lewis* did not involve a claim arising on the reservation, and the Court never stated whether the defendant was a tribal member—only that he was a tribal employee acting within the scope of employment.

**{11}** As Plaintiff correctly recognized below, *Williams* and *Lewis* address separate doctrines—tribal sovereign authority and tribal sovereign immunity, respectively. The New Mexico Supreme Court discussed the distinction in *Hamaatsa*, explaining that

> [t]ribal sovereign authority and tribal sovereign immunity are distinct doctrines with different origins and purposes. . . . Tribal sovereign authority concerns the extent to which a tribe may exercise jurisdictional authority over lands the tribe owns to the exclusion of state jurisdiction. . . . Thus, tribal sovereign authority . . . is inherently distinct from the notion of tribal sovereign immunity—the plenary right to be free from having to answer a suit.

2017-NMSC-007, ¶ 26 (citations omitted). Stated differently, "[t]here is a difference between the right to demand compliance with state laws and the means available to enforce them." *Id.* (internal quotation marks and citation omitted). Because the two doctrines are fundamentally different, these cases are easily reconciled, and we see no basis to conclude that the Supreme Court's decision in *Lewis* regarding sovereign immunity impacted, much less overruled, its longstanding sovereign-authority jurisprudence.

**{12}**   Finally, Plaintiff argues that *Hamaatsa* was wrongly decided, but we are not an appropriate audience for that argument because we are not at liberty to overrule the precedents of our Supreme Court. *See Dalton v. Santander Consumer USA, Inc.*, 2015-NMCA-030, ¶ 30, 345 P.3d 1086 (stating that "[a]ppeals in this Court are governed by the decisions of the New Mexico Supreme Court—including decisions involving federal law, and even when a United States Supreme Court decision seems contra" (internal quotation marks and citation omitted)), *rev'd on other grounds*, 2016-NMSC-035, 385 P.3d 619. For the foregoing reasons, we conclude the district court correctly determined that "*Williams* and its progeny are still good law, and apply to this case."

## II.   The District Court Lacks Subject Matter Jurisdiction Under the *Williams* Infringement Test

**{13}**   Correctly anticipating that we might reject her argument that "*Lewis* distinguishes, on its facts, the *Williams* test," Plaintiff argues in the alternative that even applying *Williams*, jurisdiction is proper in state district court. This Court enumerated three criteria relevant to the *Williams* infringement test: (1) whether the parties are Indians or non-Indians; (2) whether the cause of action arose within the Indian reservation; and (3) the nature of the interest to be protected. *Hinkle*, 2012-NMCA-074, ¶ 5; *see also Found. Rsrv. Ins. Co.*, 1987-NMSC-024, ¶ 10 (noting that exclusive tribal jurisdiction exists "when an Indian is being sued by a non-Indian over an occurrence or transaction arising in Indian country"). We evaluate each of these in turn.

## A.   Whether the Parties Are Indians or Non-Indians

**{14}**   Turning to the first factor, Plaintiff acknowledges that Defendants Paisano and Lujan are tribal members, a fact that weighs against the exercise of state court jurisdiction. *Found. Rsrv. Ins. Co.*, 1987-NMSC-024, ¶ 10. Plaintiff makes only a comment in passing regarding Defendant Lovato's non-member status, stating that "subject matter jurisdiction should be absolutely clear because the claim is by one non-tribal member against another non-tribal member employee." Beyond this conclusory assertion, Plaintiff has not cited any cases, marshalled any facts, or developed any argument to demonstrate that the district court erred in weighing this fact under *Williams. See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be.").

**{15}** As Defendants point out, the district court made unchallenged findings that Plaintiff's claims against Defendant Lovato arose from her employment with the Pueblo and that "Plaintiff and Defendants all had a contractual relationship or official relationship with the Pueblo[.]" Our Supreme Court has said that "Indian nations also possess a broad measure of civil jurisdiction over the activities of non-Indians on Indian reservation lands in which the tribes have a significant interest." *Tempest Recovery Servs., Inc. v. Belone*, 2003-NMSC-019, ¶ 13, 134 N.M. 133, 74 P.3d 67; *see also Halwood v. Cowboy Auto Sales, Inc.*, 1997-NMCA-098, ¶ 14, 124 N.M. 77, 946 P.2d 1088 ("Civil jurisdiction over the activities of non-Indians on reservation lands, engaged in pursuant to consensual commercial or contractual arrangements, presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute."). Given this, we are not persuaded that the district court erred in weighing this factor in favor of Tribal jurisdiction.

## B.     Whether the Cause of Action Arose Within the Indian Reservation

**{16}** Regarding the second factor, the district court found that Plaintiff's work environment was situated within the exterior bounds of the Pueblo and that her claims arose within the Pueblo. The court acknowledged that "[s]ome of the alleged acts occurred outside the boundaries of the Pueblo" but concluded that "[t]he alleged off-Pueblo conduct does not create subject matter jurisdiction, and is not separately actionable." While Plaintiff contests these findings and conclusions, we are unable to discern any developed argument regarding the sufficiency of the evidence supporting the district court's findings or an error in the district court's legal conclusions. Plaintiff's briefing is, instead, limited to a recitation of factual allegations supporting her claim that the "alleged activities occurred regularly beyond work times, and off-of-tribal lands (and thus beyond the jurisdiction of the Tribe)[.]" This is insufficient to demonstrate error. *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (stating that contrary evidence supporting a different result does not provide a basis for reversal because the fact-finder is free to reject a party's version of the facts).

**{17}** The district court's order demonstrates that the court considered Plaintiff's evidence and argument regarding off-Pueblo conduct, but ultimately concluded this conduct was insufficient to merit state court jurisdiction over Plaintiff's hostile work environment claims. The record contains ample evidence supporting the district court's findings, and those findings, in turn, support the court's ultimate conclusion that Plaintiff's claims arose within the Pueblo. Accordingly, we find no error in the district court's evaluation of this factor.

## C.     The Nature of the Interest to Be Protected

**{18}** The bulk of Plaintiff's argument is directed toward the final factor, the nature of the interest to be protected. According to Plaintiff, *Lewis* affected the analysis under this prong of the *Williams* test when a defendant is sued in an individual capacity. Plaintiff maintains that, after *Lewis*, "when an individual capacity claim is brought against a tribal member employee, the Tribe's interests are no longer legally implicated." Put differently,

Plaintiff's argument is that the tribal interest here is insufficient simply because Plaintiff chose to sue Defendants in their individual capacities.

**{19}** For all of the reasons set forth in the previous section of this opinion, we reject Plaintiff's argument that *Lewis* in any way altered the infringement test. Under longstanding New Mexico law, the nature of a tribe's interest is broader than, and does not turn on, its status as a party or a real party in interest. Rather, our courts have examined the tribe's interest in exercising adjudicatory jurisdiction over the lawsuit itself, emphasizing "the right of an Indian defendant to be heard in Tribal Court and be ruled by his own laws." *Found. Rsrv. Ins. Co.*, 1987-NMSC-024, ¶ 9. As the Supreme Court made clear in *Williams*, the overriding consideration is whether "the exercise of state jurisdiction . . . would undermine the authority of the tribal courts over [r]eservation affairs and hence would infringe on the right of the Indians to govern themselves." *Williams*, 358 U.S. at 223.

**{20}** Applying this standard, the district court concluded that Plaintiff's claims "implicate[] the operations of the Pueblo of Sandia Tribal Court, a fundamental component of the Pueblo's government[,]" and that "[t]he State of New Mexico's regulation of the Pueblo's employment within the Pueblo's [T]ribal [C]ourt infringes on the [T]ribe's self-governance." Plaintiff never directly challenged these findings and conclusions. While Plaintiff made passing arguments that Defendants' conduct was individually motivated, beyond the scope of employment, and violated Tribal policy, these allegations do not demonstrate an error in the district court's findings or in its application of the law to the facts. Moreover, given that Plaintiff's claims are based on allegations that Defendants violated Tribal policy, we agree with the district court's conclusion that this employment matter is one demanding the exercise of the Tribe's responsibility for self-government. *See Hinkle*, 2012-NMCA-074, ¶ 4.

**{21}** Taking into consideration all of the *Williams* criteria, the district court correctly concluded that exclusive tribal jurisdiction exists in this case. *Found. Rsrv. Ins. Co.*, 1987-NMSC-024, ¶ 10.

**CONCLUSION**

**{22}** We reaffirm our reliance on the *Williams* infringement test and adhere to our "venerable tradition of deference to tribal sovereignty, particularly where the exercise of that sovereignty concerns tribal authority over the conduct of its own members in Indian country." *Hinkle*, 2012-NMCA-074, ¶ 6 (alteration, internal quotation marks, and citation omitted). Accordingly, we affirm the district court's dismissal of Plaintiff's action for lack of subject matter jurisdiction.

**{23}   IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**ZACHARY A. IVES, Judge**